UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

Jason L. Sanders #305405

_____

_____

**FILED - GR**

April 8, 2020 11:21 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: tlb SCANNED BY: JW 19-1-20

(Enter above the full names of all plaintiffs, including prisoner number, in this action.)

**1:20-cv-308**
Janet T. Neff- U.S. District Judge
Sally B. Berens- Magistrate Judge

v.  WARDEN MATT MACAULEY, Mike WALCZAK
Unknown HARRISON, Unknown KAMMERS
Unknown Smolinski

(Enter above the full name of the defendant or defendants in this action.)

## COMPLAINT

I.   **Previous Lawsuits**

**CAUTION: The Prison Litigation Reform Act has resulted in substantial changes in the ability of incarcerated individuals to initiate lawsuits in this and other federal courts without prepayment of the civil action filing fee. Accurate and complete responses are required concerning your litigation history. Generally, a plaintiff's failure to accurately and completely answer the questions set forth below will result in denial of the privilege of proceeding *in forma pauperis* and require you to pay the entire $400.00 filing fee regardless of whether your complaint is dismissed.**

A.   Have you ever filed a lawsuit while incarcerated or detained in any prison or jail facility?   Yes ☑ No ☐

B.   If your answer to question A was yes, for each lawsuit you have filed you must answer questions 1 through 5 below. Attach additional sheets as necessary to answer questions 1 through 5 below with regard to each lawsuit.

1.   Identify the court in which the lawsuit was filed. If it was a state court, identify the county in which the suit was filed. If the lawsuit was filed in federal court, identify the district within which the lawsuit was filed.
Western District Court in Marquette, BARAGA, OAKS, Lansing, Ionia

2.   Is the action still pending?   Yes ☑ No ☐

a.   If your answer was no, state precisely how the action was resolved: The Lansing Ionia case was settled, BARAGA was charged for filing an affidavit that was sent to the court and I was charged w/out process. Lost other one, Other 2 OAKS + Marquet am paying both of them

3.   Did you appeal the decision?   Yes ☐ No ☑

4.   Is the appeal still pending?   Yes ☐ No ☑

a.   If not pending, what was the decision on appeal? _____

_____

_____

5.   Was the previous lawsuit based upon the same or similar facts asserted in this lawsuit?   Yes ☐ No ☑

If so, explain: _____

II.  **Place of Present Confinement**  Ionia Bellamy Creek Correctional Facility

If the place of present confinement is not the place you were confined when the occurrence that is subject of instant lawsuit arose, also list the place you were confined:

_____

B. 1

I filed an affidavit of complaint to the court, I didn't know that they would charge me the 350.00, but they did and I never even filed a civil complaint. that was in BARAGA, MI

2. My lawsuit in Marquette was dismissed because I filed my complaint before the greivance procedure was completed.

3. My civil complaint in Lansing, MI was completed with a settlement comforence.

4. My complaint at OAKS correctionel facility was dismissed, I think it was failure to exhaust, or state a claim, I'm not sure

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

Jason Sanders
    Plaintiff,        Verified Complaint

V.

MATT MACAULEY et AL,    NO.  -CV-
    DefendAnts      Hon.
                MAG.

Complaint For Punitive, Compensatory
Injunctive and Declatory Releif

## I. Jurisdiction and Venue

This is A civil Action Authorized by 42 U.S.C.
section 1983 to redress the deprivation under
color of the state law of rights secured by
the Constitution of the United States. The Court
has Jurisdiction under 28 U.S.C. section 1331
and 1343 (A),(3), and 42. U.S.C. of 1985 (3).
Plaintiff seeks declatory releif pursuant to 28
U.S.C. section 2201 and 2202.
Plaintiffs claims for Injunctive releif are
Authorized by 28 U.S.C. section 2283 and
2284 and rule 65 of the federal Rule of
Civil Procedure.

## II

### AFFIDAVIT OF Formal Complaint

Pursuant to 28 U.S.C. section 1746,
I swear under penalty of perjury that
the following is true, Factual and complete
to the best of my knowledge, information
belief and Ability At this time, putting
this forth in good faith being competent
and housed in the Department of Corrections,
for which also Acts As proof of Service.

1. I Am filing this verified Formal complaint
(to be entered into the personal files of named
parties herein) in lieu of ~~crossed~~ participating
in this charade purported to be the greivance
procedure, due to prior indicative patterns
of bias demonstrating the futility in such
efforts of to get a fair, complet and meaningful
investigation to resolve these adverse issues
which conflict with rehabilitive goals,
prooving no administrative remedy is available
nor applicable.

2. I Am providing the original copy of this
directly to the Warden of the facility and
copy's to other Agency's to ensure all
Administrations At their highest levels have
the proper and Adequate opportunity to resolve

2.

these Adverse circumstances As well As For later retrieval if litigation prooves necessary in the event Administrators continue refusing to satisfactorily resolve this issue.

3. Because these state employees and their Actions named herein, Are clearly in violation of the rules, policies, operating procedures, statues, laws, their own Employee Handbook Agreement guidlines. It is also necessary to recognise herein that this set a clear example to myself And All others, that not all afforestated strictures need be adhered to At All times And are in fact undeniably open to individual interpretation as to when, which and to what extent they should or shall Abide without fear of any consequences or retribution since supervisors and Administrators refuse to discipline their employees.

## III

### Plaintiff

4. Plaintiff Jason Sanders is and was At All times mentioned herein A prisoner of the State of Michigan, in the custody of the Michigan Department of Corrections. He is currently confined to Ionia Bellamy Creek Correctional Facility in Ionia Michigan.

## IV.

### Defendants

5. WARDEN Macauley is the Warden of Ionia Bellamy Creek (IBC) and is being sued in his official and individually capacity. Defendant is revelant to the claims brought forth herein this Complaint.

6. Mike Walczak is the Deputy Warden At (IBC) and is being sued in his official and Individual capacity. Defendant is relevant to the claims brought forth in this complaint.

7. Defendant Harrison is the Luttenant At the time of these incidents At (IBC) and is being sued in his official and Individual capacity. Defendant is relevant to the claims brought forth in this complaint.

8. Defendant Kammers is an officer At (IBC) and is being sued in his official and Individual capacity. Defendant is relevant to the claims brought in this complaint.

9. Defendant Smolinski is the classification Director At IBC and is being sued in her official and Individual capacity. Defendant is relevant to the claims brought forth herein this complaint.

10. Each defendant at all times mentioned herein acted under color of state law, at all times relevant are being sued in their individual as well as official capacity.

11. Each defendant knew or should have known that their actions or failure to act violated MDOC Administrative rule 791.2205 (1) A, B, D, E, G, and Rule 791.3315 P.A. 140 1979, Employee Handbook pg 33 #27 and #47, Employee Discipline, Rule 791.3310, MCL 423.501, 791.251, MCL 19.142 section D, Policy Directive and Operating Procedure 03.03.130, 03.03.105, 02.03.100 A work rule #27 and #47. United States 1st, 5th, 8th and 14th Amendments Rights of the U.S. Constitution and 42 U.S.C. 1985 (3)

## V.

## STATEMENT OF FACTS

12. On 11-20-19, Plaintiff completed his assignment in his food service job and got in line to be searched by officer Buskrde, who was the regular officer that worked in Food Service chow hall on 2nd shift at time of incident.

13. While being searched, officer ~~Kammers~~ Bus Krde told Plaintiff to throw away 3 apples because plaintiff had 6 apples in a bag. Officer Buskrde only allows prisoners to take 3 Items to their cell from the kitchen.

14. As plaintiff went to the trash and threw away 3 apples, officer Kammers yelled "What do you have in your pants?" Plaintiff replied "I dont have nothing in my pants!"

15. Officer Kammers then said "yes you do, I saw you putting apples in your pants!" Plaintiff then replied "I didn't put nothing in my pants, and since you keep harrassing me, Ima wrote a grebvance on you!"

16. Officer Kammers had officer Buskrde search plaintiff again, Buskrde found nothing and told plaintiff he could leave.

17. As plaintiff was leaving, officer Kammers yelled "your think you got away, but I'll teach you nigger!"

18. Officer Kammers was helping officer Buskirde searched prisoners kitchen workers that night but did not work as a regular in food service. He only worked 2 times while plaintiff worked in food service from 10-25-19 to 11-21-19.

19. On the night of 11-20-19, Plaintiff wrote kites and attempted to talk to Lt. Harrison about officer Kammers and a greivance on officer Kammers for harrassment and racial discrimination and filed it on 11-24, this greivance was "lost" alledgly in the mail system, so plaintiff refiled the greivance as he was told to do by the greivance coordinator.

20. Plaintiff went to work the next day, 11-21-19, after punching in the clock to start his shift, he went to his assigned area (Pots + Pans) at aproximately 11:40.

21. Plaintiffs food service detail is from 11:30 am when count clears to 3:00 pm and from 4:30 pm when count clears to 7:00 pm. Plaintiff was not allowed to stay during count time, he has to return to his unit for "count time" where prisoners are being counted.

7.

22. After completing his Assignment, Plaintiff changed out of his work uniform and went to clock (or punch) out, but Plaintiffs card was missing, officer Kammers hid the Plaintiffs card.

23. Both plaintiff and prisoner clerk Perry went to food Service staff Mr. Davis, Davis said that he would look into the problem and possibly have Another card made for Plaintiff, if we could not locate the punchout card

24. As plaintiff was getting ready to leave, Prisoner Porter, who is the head seg-cart worker Asked Plaintiff if he would help push A food cart to unit-5 on Plaintiffs way to unit-6. Unit 6 is where plaintiff locks.

25. Plaintiff said "yes" Porter then told Plaintiff that the cart he needed Plaintiff to push was for level 4, 5-Block food cart, the first cart in line, and that we have to wait on officer Kammers to unlock the door and let Plaintiff out the back door. Minutes later officer Kammers opened the door for Plaintiff and gave him Authorization to leave without searching him.

26. Plaintiff started pushing the food cart and told officer Kammers "have a nice day", officer Kammers responded "you too". Plaintiff pushed the food cart to unit-5 and went to his cell for count. Plaintiff did not enter unit 5, which is a level-4 unit, another prisoner stood at the gate and took the cart to unit-5. Plaintiff is level 4 and locked in 6-unit. Officer Kammers never asked for a shakedown.

27. At aprox 16:30, plaintiff returned to work in the kitchen and was looking for his punch card, Kammers had it. Officer Kammers told Plaintiff to go back to his cell, Plaintiff asked "Why?" And officer Kammers said "because you are laid in and fired for "out of place".

28. At aprox 8:00, Plaintiff was called out to be reviewed by Seargent fox on a Class II misconduct report that was written by officer Kammers

29. In Kammers haste to have Plaintiff fired, he made several allegations in the misconduct report and a falsified 363 work evaluation form with forged signature and falsified information, that he gave to Smolinski on 11-21-19

9.

NOTE: The misconduct report cant be seen on the paper, it say's "Prisoner Sanders 305405 is schedualed to be on his kitchen assignment from 11:15 to 1900 hrs. Prisoner Sanders was spotted in the unit at aprox 1450 hours by C/o LaBelle At no time was he given Authorization to leave his Assignment."

29. Plaintiff told Sgt. fox that there was several reasons why this misconduct shall be dismissed, one because not only was the report falsified, but it was written in retaliation to plaintiffs threat to greive officer kammers for harrassment and Racial discrimination.

30. Sgt. fox told plaintiff that he would offer Plaintiff 3 days loss of privilledges to plead guilty. Plaintiff "No, Im not guilty, I'd rather have a hearing with the Luitenant and since the seargent has the authority to find prisoners guilty and issue Sanctions, then he should have the same authority to dismiss tickets of prisoners that are not guilty

31. Sgt. fox said "if you feel you are not guilty, gather your evidence and take it up with whatever Luitenant ~~cocolies~~ hears your misconduct hearing.

10.

32. On 11-26-19, Plaintiff was called to the Control Center to be heard on the misconduct report written by officer Kammers. Lt. Harrison conducted this hearing.

33. Lt. Harrison read the misconduct report and asked Plaintiff "how do you plea?" Plaintiff plead "not guilty". Harrison continued to conduct the hearing and his own investigation.

34. Lt. Harrison asked Plaintiff "what happened". Plaintiff responded, "This misconduct was written in retaliation because I told officer Kammers that I was writing a grievance on him for harrassment and racial discrimination.

35. Plaintiff continued and told Lt. Harrison that the misconduct should have been lowered to a class ③ misconduct and dismissed because:
A. Kammers falsified the misconduct report and retaliated against plaintiffs threat to file a grievance.
B. Officer Kammer alledged that Plaintiff had no authorization to leave his assignment, yet he unlocked the back door to the kitchen and allowed plaintiff to leave without requesting a shake down or punching out for work.

11.

C. Officer Kammers alledged that Plaintiff went to (a unit) but failed to name a unit in the body of the misconduct report what (unit) Plaintiff went to, to verify "Out of Place".

D. Officer Kammers misconduct report states that Plaintiff was in the chow hall, on the walk and in Plaintiffs unit (6-Block) at the same time. There is no way that Plaintiff was in 3 places at the same time.

E. Officer Kammers did not accuse Plaintiff of not "punching out" from work in the body of the misconduct.

36. Lt. Harrison flipped through the hearing packet which had a photo copy of Plaintiffs "Punch out card" on the last page. After flipping to the last page, Harrison asked Plaintiff why he didn't punch out before he left the chow hall? Plaintiff tried to explain that his card was missing and that the Plaintiff and kitchen clerk Mr. Perry spoke with food service staff Mr. Davis concerning this issue and Plaintiff told Harrison that there was nothing in the misconduct report stating that Plaintiff failed to punch out, which is important because without this accusation, the misconduct for "out of place" had no foundation and Harrison would have

dismiss the misconduct report that was
written in haste and in retaliation to Plaintiffs
protected conduct. Lastly Kammers had
Plaintiffs punch card the whole time and provided
a copy to Harrison to alledge that Plaintiff
failed to punch out.

37. Harrison then made several phone calls to Smolinski
to defendant Walczak, officer Kammers and
Food Service Staff Delnay. He asked Delnay
if prisoner kitchen workers are allowed to
stay in there assigned area during count time?.
then he asked Delnay if prisoners have to ~~come~~
clock out before leaving and if Food Service
staff was allowing prisoners to leave without
punching out, then he called Kammers and asked
if Plaintiff was guilty, and Smolinski if I was an __ hole.

38. After this minor investigation, Harrison
hung up the phone and told Plaintiff, " I am
finding you guilty for failure to punch out
before leaving the chow hall Kitchen area.

39. Plaintiff tried to explain that he wasn't
written a misconduct for failing to " punch out"
and that he and prisoner clerk Perry went
to Food Service Staff Davis with this issue.

40. Harrison said " Im giving you 7 days
Loss of Priviledges and prisoners like you should
go to food service staff, (not prisoner kitchen
clerk) if you have an issue with the clock

13.

And write a grievance on food service supervisors.

41. Lt. Harrison then placed an X on a section of the hearing report and told plaintiff to "sign here for a copy". Plaintiff ~~thought~~ he was tricked into signing the portion of the report that said "plaintiff waived his right to a hearing and appeal of this misconduct report. see EXHIBIT E

42. A.
~~42.~~ Harrison also found all black prisoners guilty "that day and all white prisoners "not guilty".

42. Harrison has a custom of doing this so prisoners would not have their misconduct reports overturned at the level of Deputy Warden, and to secure terminations from a job, fair hearings Appeals and controlling the amount of appeals the Deputy Warden has to hear or Smolinski has to review.

43. Officer Kammers wrote several misconduct reports on black prisoners that day and Lt. Harrison did the same to these prisoners even though they were not written the same misconduct reports. Kammers lied in the ~~report~~ grievance plaintiff wrote on him.

44. On aprox. 12, 2009, plaintiff was reviewed by the classification Director Smolinski, plaintiff told her that he appealed the final decision of the misconduct and she agreed to with held the reclassification process until plaintiffs appeal was complete.

14.

45. On aprox. 12-6-19, Deputy Warden Walczak refused to review plaintiffs defense on the misconduct written by Officer Kammers alledging that Plaintiff signed a portion of Lt. Harrison's hearing stating that Plaintiff waived his hearing and appeal. And that Harrison wrote that Plaintiff plead guilty.

46. On 12-12-19, Plaintiff was reveiwed by Smolinski, placed on "Double O status" and said Plaintiff could not get another job for the next 6 months and to rewrite her after this time period is up. to be placed in a Job Pool.

47. Smolinski also had Plaintiffs sign an assignment waiver form that had all of the information filled out already by her. This form had falsified information alledging that Plaintiff had a history of disruptive behavior on work assignment that would found date placing plaintiff on "Double O status", for 6 months!

48. On the same date plaintiff received a "Prisoner Program and work assignment 363 evaluation" form. This form was prepared by Officer Kammers with falsified information and a forged name sent to me by Smolinski.

49. The Supervisor's signature (Ms. Baldwin) was falsified and forged as well as the rest of this document on 11-21-19, the same day Kammers wrote the falsified misconduct report on Plaintiff. Kammers requested termination pending the outcome of the hearing and appeal process, but he filed this form to Smolinski before Plaintiff was not even reviewed on the misconduct yet.

50. Kammers forged on the form that food service will not take plaintiff back to work, Kammers also forged falsified information that plaintiff was assigned to "Pots and Pans" on 10-25-19, when plaintiff was promoted to "Pots and Pans" on 11-14-19, for good behavior and conduct on food service work report evaluation by Ms. little and Supervisor Baldwin giving plaintiff an above average score of 35.

51. On the work/school assignment performance section, Kammers falsified sections 1-13, giving plaintiff a below average performance score of 12 points, which is a dissatisfactory work report, which is grounds for termination from a job, 6 months denial of a job by Smolinski, loss of priviledges and he forged signatures on this form.

16.

52. Officer Kammers falsified and contridicted his report. He has only worked 1 or 2 days since Plaintiff has worked for food Service and could not propely prepare this evaluation without Falsifing information and foresing names to ensure that Plaintiff would not only be fired, but be placed on "Double O Status" and not be allowed another Job for 6 months without waiting to see the out come of the misconduct hearing and Appeal in retaliation to Plaintiffs right to a fair hearing, Appeal and greivance. He acted as if he had fore knowledge that Plaintiff would most defrnitly be found guilty.

52. A see exhibit N3, where defendant Smelinski gave A response to my greivance written on officer Kammers

53. On 12-20-19, Plaintiff received a 363 work evaluation form from food Service staff Ms. Little and Baldwin, giving plaintiff a score of 35 points, which is an Above Average score.

53. On 12-19-19, Plaintiff was going through food lines in the kitchen and spoke to food service supervisor MS. Baldwin. Plaintiff Asked MS. Baldwin how did he receive a below average score, refusal to take Plaintiff back and termination, when he showed up every day on time, never stole from the kitchen, helped others with their Jobs and followed all orders from staff?

17.

54. MS. Baldwin stated (after Plaintiff showed her officer Kammers falsified work report) that she did not sign this work report written by officer Kammers, that the document was falsified and forged, containing false information and that she is going to prepare a proper/correct work report processed by food service staff from 10-25-19 to 11-21-19 and that she wanted plaintiff to have Smolinski call her to discuss plaintiffs return to food service, and that they will take plaintiff back.

55. On - 12-20-19, plaintiff received a 363 work evaluation from food service staff ms. little and Baldwin, giving plaintiff a score of 35 points which is above average score. Please see section 8 where it states " prisoner did the assigned share of work assignment, remained in his assigned area until the end of his shift". In contrast to the misconduct report and work evaluation 363 form written by officer Kammers # 26 and # 48 of this complaint which was amended again on 1-30-20 by food Service Supervisor ms. Baldwin. giving plaintiff an Above Average score of 37 points!

56. Smolinski's forgery and placement of false information on the ~~work~~ assignment waiver form supported Kammers attempt to not only fire plaintiff, but also mislead all staff involved to think that the below average 363 work evaluation form, with a below average score, was foundation enough to fire plaintiff, place him in his cell 23 hours a day for 6 months and deny plaintiff a Job, his only source of income. YARD, phone, GYM, bible study, LAW Library, day room, Fund raiser

@ 56. Warden Smolinski is supposed to ensure that prisoners are to be reclassified every 30 days after reclassification but refused to do so violating prison policy.

57. Plaintiff sent an Affidavit of Complaint to WARDEN MACAULEY on 1-1-20, asserting that his subordinates have a custom/policy of falsifying documents, conspiring with each other to violate plaintiffs rights, forging information and names and retaliating against black prisoners who write grievances on them. Warden never responded or make any attempt to stop this practice or custom by Smolinski, Harrison or Kammers.

After plaintiff greived her and Kammers for conspiracy, forgery and falsification of documents she used double 0 status as another sanction.

see exhibit F(6x) and EX. F2

## EXHAUSTION
## OF legal Remedies

58. Plaintiff used the IBC grievance procedure available at Ionia Bellamy Creek Correctional facility to try and resolve these issues. Plaintiff presented all facts relating to his complaint,

19.

and appealed all denials too all 3 steps,
except those that were upstructed (loss or destroyed)
by defendants from 11-20-19 to todays date.

Legal Claims

Plaintiff re-alledge and incorporate by
reference paragraphs 1-57, where there was
no penalogical Justification for the defendants
Arbitrary and exprius Actions.
   Claim one Violation of U.S. Constitution #
A. On 11-20-19 after Kammers racially discriminated
and harrased Plaintiff, Plaintiff threatened to
write a grievance on officer Kammers. Officer
Kammers responded by falsifing a class 2
misconduct report and a 363 work evaluation
form, and also forged signatures in retaliation
to Plaintiffs protected conduct in violation
of plaintiffs 1st, 5th, 8th and 14th amendments
to the United States Constitution.

Claim two violation of U.S. Constitution #
B. On 11-26-19, Harrison falsified the misconduct
hearing procedure, forged the hearing report stating
that plaintiff "plead guilty" when he did not and
tricked plaintiff into signing the area of the hearing
report alledging that plaintiff "waived his right to
a hearing and appeal of Kammers misconduct report.

and was an unlawful disciplinary procedure
and substantial Due Process claim, when Harrison
conducted a whole hearing on Kammers misconduct
report in violation of the 1st, 5th, 8th and 14th
Amendment to the United States Constitution.


Claim 3 violation of U.S. Constitution #

| | |
|---|---|
| claim 3 | "Smolinski fulsified the (CSJ-126) assignment |
| Smolinski | waiver form and forged information on the |
| Also retaliated | form (that plain plaintiff had a history of disruptive |
| against plaintiff | behavior on assignment) in order to place |
| after plaintiff | plaintiff on (double 0 status) after filling out |
| filed a grievance | sections of the form which the prisoner is |
| against her | supposed to fill out. Her custom of forging |
| by refusing | documents and conspiring with other officers/ |
| to reclassify | MDOC staff to violate plaintiffs rights by |
| plaintiff per | forgering plaintiffs name and info on the |
| policy after 30 | form violated plaintiffs 1st, 5th, 8th and 14th |
| days, using | rights to the United States Constitution. |
| double 0 status | |
| as a sanction | Claim 4 violation of U.S. Constitution # |
| which is | D. WALCZAK refused to investigate plaintiffs |
| Also double | allegations against Kammers, Harrison and |
| Jeopardy. | Smolinski in the hearing process when |
| violation of | plaintiff attempted to appeal the falsified |
| | misconduct and hearing. Walczak alledged |
| | that Plaintiff waived his right to a hearing |
| | and appeal as his reason for failing to investigate |

21.

both HARRIS, KAMMERS and Smolinski in violation of Plaintiffs 1st, 5th, 8th and 14th Amendments to the U.S. Constitution and Due Process.

Claim 5 violation of U.S. Constitution Amendment # E, KAMMERS, HARISON, Smolinski and WALCZAK conspired with each other in concert to violate Plaintiffs rights to be free of retaliation, Racial discrimination, falsification of documents, forgery, Due Process and an unlawful disciplinary procedures. Plaintiff relied upon a Job to place funds in his account to purchase food, clothes, hygein, avoid falsified misconduct reports, keep Security points down, were losses that resulted directly from the above mentioned staffs reliance on forgery and falsified documents in violation of Plaintiffs 1st, 5th, 8th and 14th Amendments to the U.S. Constitution.

Claim 6 violation of U.S. Constitution Amendment # F. Warden MACAULEY received an Affidavit of formal Complaint from Plaintiff informing him of his subordinates Conspiracy to violate Plaintiffs rights, by forgery of documents, falsifying documents violating Plaintiffs rights under the 1st, 5th, 8th and 14th Amendments to the U.S. Constitution and Warden failed to enterveinn or investigate their actions.

The Plaintiff has no plain, adequate or complete Remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declatory and Injunctive relief which Plaintiff seeks.

## Prayer of Relief

Where fore Plaintiff respectfully prays that this Court enters Judgment granting Plaintiffs;

Declaration that the acts and omissions described here in violated plaintiffs rights under the Constitution and laws of the United States.

A preliminary Injunction ordering defendant Kammers to stop harrasing Black prisoners, and to stop retaliating against prisoners who engage in protected conduct (grievances) and to stop conspiring with defendant Harrison and Smolinski when acting in hearing procedure, in the misconduct process and classification process to secure guilty findings and stop forging documents and placing falsified imformation in them.

Order defendant HARRISON to stop forging documents with falsified misleading information in connection with the hearing process and to stop conspiring with defendant WALCZAK, KAMMERS and Smolinski to violate prisoners rights.

Order defendant WALCZAK to stop conspiring with HARRISON, KAMMERS and Smolinski to secure unconstitutional and unfair misconduct hearings + classification.

Order defendant Smolinski to stop forging documents (assignment waiver forms) in connection with the classification process and stop conspiring with the above mentioned prison staff to mislead and place prisoners on 6 month "double 0 status" and denial of a job, retaliation and double Jeopardy

Order defendant MacAuley to stop allowing his subordinates from violating prisoners rights by forgering documents with false information and conspiring with each other mentioned in this complaint to secure guilty findings in the hearing Process, retaliation and double Jeopardy.

Compensatory damages in the amount of $10,000 against defendants Jointly and severally for each violation of the united states Constitution

24.

Racial discrimination, Harrassment, Retaliation, forgery of documents with falsified imformation and conspiracy to violate plaintiffs rights, double Jeopardy expungement of the misconduct written by Kanners from plaintiffs file.

$100.00 a day for every day plaintiff was (laid in) fired from his Job, placed on "double O status", $3.85 per hour for back wages up onto the day this issue is resolved starting from 11-21-19, and counting $200 each day for days on L.O.P. sanctions $100.00

Punitive damages in the amount of $5,000.00 against each defendant for violation of plaintiffs rights and MDOC policy and procedure And LAW.

A Jury trial on all issues triable by a Jury plaintiffs cost of suit.

Any additional relief that this court deems Just, proper and equitable.

Jason Sales
Ionia Bellamy Creek
Corr. facility
1727 W. Bluewater Hwy
Ionia, MI 48846

25.

Verification

I have read the foregoing case Verified complaint and hereby verify that the matters alledged on information and belief and, as to these, I beleive them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Ionia, Michigan on 2-29-20

Jason Enders

26.

JAson Sanders 308408
I am A Bellamy Creek facility
17 27 W, Bluewater Hwy
Ionia, MI 48846





U.S. POSTAGE >> PITNEY BOWES

ZIP 48846
02 4W
0000344027 APR 06 2020
$ 008.70⁰

U. S. DISTRICT Court
Western District of Michigan
399 Federal Building
110 Michigan St.
Grand Rapids, MI 49503