UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASON L. SANDERS,

        Plaintiff,               Case No. 1:20-cv-308

v.                                       Honorable Janet T. Neff

MATT MCCAULEY et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McCauley, Walczak, Harrison, and Smolinski. The Court also will dismiss for failure to state a claim Plaintiff's claims against Defendant Kammers alleging violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses, the Fifth Amendment, and the Eighth Amendment.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden Matt McCauley, Deputy Warden Mike Walczak, Lieutenant Unknown Harrison, Corrections Officer Unknown Kammers, and Classification Director Unknown Smolinski.

Plaintiff alleges that on November 20, 2019, he completed his food service assignment and got in line to be searched by Officer Buskrde, who told Plaintiff to throw away three apples, because Plaintiff had six apples in a bag. Officer Buskrde only allows prisoners to take three items to their cell from the kitchen. Plaintiff went to the trash and threw away three apples. At this point, Defendant Kammers yelled "What do you have in your pants?" Plaintiff said that he didn't have anything in his pants. Defendant Kammers disagreed, telling Plaintiff that he saw him putting apples in his pants. Plaintiff said that he had not put anything in his pants, and that since Defendant Kammers was harassing him, he planned to file a grievance on him. Defendant Kammers then had Office Buskrde search Plaintiff again, but nothing was found as a result. Officer Buskrde told Plaintiff he could leave the area, but as he was leaving, Defendant Kammers yelled, "You think you got away, but I'll teach you nigger!" Defendant Kammers was not regularly assigned to food service and Plaintiff only saw him in the area twice between October 25, 2019, and November 21, 2019.

On the evening of November 20, 2019, Plaintiff wrote kites and attempted to talk to Defendant Harrison about Defendant Kammers. Plaintiff also filed a grievance on Defendant Kammers for harassment and racial discrimination. This grievance was allegedly lost in the mail

system, so Plaintiff refiled the grievance on November 29, as instructed by the grievance coordinator.

On November 21, 2019, after Plaintiff punched in to work, he reported to his assigned area at approximately 11:40 a.m. Plaintiff's work detail is from 11:30 a.m. until 3:00 p.m., and again from 4:30 p.m. until 7:00 p.m. Plaintiff is not allowed to stay in food service between his shifts because he has to be in his unit for count time. After completing his work assignment, Plaintiff changed out of his uniform and went to punch out. However, Plaintiff's time card was missing. Both Plaintiff and prisoner clerk Perry reported the missing time card to food service staff Mr. Davis, who said he would look into the matter. Mr. Davis said that if Plaintiff's time card could not be located, he would have a new one made for Plaintiff. As Plaintiff was getting ready to leave, the head segregation cart worker asked Plaintiff to help him by pushing the food court to Unit 5, which was on the way to Unit 6, where Plaintiff locked. Plaintiff agreed to help and he waited with the segregation cart worker for Defendant Kammers to unlock the door.

Minutes later, Defendant Kammers gave Plaintiff authorization to leave the unit without being searched. As Plaintiff was leaving food service, Defendant Kammers told him to have a nice day and Plaintiff responded by saying "you too." When Plaintiff arrived at Unit 5, another prisoner met Plaintiff at the gate and took the cart. At approximately 4:30 p.m., Plaintiff returned to Food Service for his work assignment and looked for his time card. Defendant Kammers saw Plaintiff and told him to go back to his cell because he was being laid in for being out of place.

A class II misconduct ticket was reviewed with Plaintiff at 8 p.m. by Defendant Fox. In the ticket, Defendant Kammers referred to a falsified work evaluation form that had a forged signature. The misconduct ticket stated: "Prisoner Sanders 305405 is scheduled to be on

his kitchen assignment from 11:15 to 1900 hrs. Prisoner Sanders was spotted in the unit at approx. 1450 hours by [Corrections Officer] Labelle. At no time was he given authorization to leave his assignment." (ECF No. 1, PageID.12.) Plaintiff told Defendant Fox that Defendant Kammers falsified the grievance in order to retaliate against Plaintiff for threatening to file a grievance. Defendant Fox offered Plaintiff three days loss of privileges in exchange for pleading guilty. Plaintiff refused because he was not guilty. Defendant Fox told Plaintiff to gather his evidence for the hearing.

On November 26, 2019, Plaintiff was called to the control center to be heard on the misconduct by Defendant Harrison. Plaintiff told Defendant Harrison that the misconduct was falsified by Defendant Kammers to retaliate against him. Plaintiff explained that Defendant Kammers had been the person who authorized Plaintiff to leave food service, and that he knew that Plaintiff was not out of place. Defendant Kammers also accused Plaintiff of being in three different places at the same time, the chow hall, the walk to Plaintiff's unit, and in Plaintiff's unit. Defendant Kammers did not accuse Plaintiff of leaving work without punching out in the body of the complaint, but included a photocopy of Plaintiff's time card on the last page of the ticket. Defendant Harrison asked Plaintiff why he did not punch out and Plaintiff explained that his time card had been missing, and that kitchen clerk Perry and Food Service employee Davis were both aware of the missing time card. Defendant Harrison made several phone calls to Defendants Smolinski, Walczak, and Kammers, and Food Service employee Delray. Defendant Harrison asked Mr. Delray about whether kitchen workers were allowed to stay in the assigned work area during count, whether prisoners are required to clock out before leaving work, and if Food Service staff were allowing prisoners to leave without punching out. When he talked to Defendant

4

Kammers, Defendant Harrison asked if Plaintiff was guilty, and when he talked to Defendant Smolinski, he asked if Plaintiff was an "asshole."

When Defendant Harrison completed his phone calls, he told Plaintiff that he was finding him guilty for failing to punch out before leaving the kitchen area. Plaintiff was given seven days' loss of privileges. Defendant Harrison placed on "X" on a section of the hearing report and told Plaintiff to sign in order to receive a copy. Plaintiff complied, but later realized that he had been tricked into waiving his right to appeal the misconduct conviction. Plaintiff claims that Defendant Harrison has a custom of doing this so that prisoners cannot have their misconducts overturned. Defendant Kammers wrote several misconducts on black prisoners that day and Defendant Harrison did the same thing to each of those prisoners. On the same date, Defendant Harrison found all of the white prisoners who had misconducts "not guilty."

On December 6, 2019, Defendant Walczak refused to review Plaintiff's misconduct conviction, stating that Plaintiff had waived his right to hearing an appeal and had pleaded guilty. On December 12, 2019, Plaintiff was given a review with Defendant Smolinski and was placed on double O status, which prevented Plaintiff from taking a job for 6 months. Plaintiff was told to kite after 6 months to be placed in the job pool. Defendant Smolinski falsified a form stating that Plaintiff had a history of disruptive behavior on work assignment. Plaintiff also received a work evaluation form, which had been prepared by Defendant Kammers. The form had a signature which purported to be that of Ms. Baldwin, but which Plaintiff claims was forged. The form also falsely stated that Food Service would not accept Plaintiff back on the job and that his job performance had been below average.

On December 19, 2019, Plaintiff spoke to Ms. Baldwin, who had been his supervisor when he worked in Food Service. Plaintiff asked Ms. Baldwin why he had received a

5

below average job performance score, and Ms. Baldwin stated that she had not signed the work report written by Defendant Kammers.  Ms. Baldwin told Plaintiff that she was going to prepare a correct work report reflecting Plaintiff's performance between October 25, 2019, and November 21, 2019, and that Plaintiff should have Defendant Smolinski call her to discuss Plaintiff's return to work in Food Service.  On December 20, 2019, Plaintiff received a work report from Ms. Baldwin and Ms. Little, giving him an above average score.  The amended report stated that Plaintiff had done his share of the work and had remained in his assigned area until the end of his shift.  Plaintiff sent a complaint to Defendant McCauley, explaining what had happened.  Defendant McCauley never responded to the complaint.

Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court

6

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Respondeat superior

In Plaintiff's complaint, he claims that he sent a complaint to Defendant McCauley, but that Defendant McCauley did not respond to his complaint. Plaintiff fails to make specific factual allegations indicating that Defendant McCauley engaged in any active misconduct against him. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may

not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant McCauley engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant McCauley.

## IV.     Due process

Plaintiff claims that his Class II misconduct conviction and the loss of his job in Food Service violated the procedural protections of the Fourteenth Amendment's Due Process Clause. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105,

¶ AAAA).  Therefore, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class II misconduct conviction.  The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.  *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).  Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.

In addition, the Court notes that Plaintiff did not have an entitlement to continued prison employment in the absence of just cause for discharge.  Plaintiff has no inherent constitutional right to rehabilitation, education, job assignments, or other programming.  *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Newsom v. Norris*, 888 F.2d 371, 374-75 (6th Cir. 1989); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Bills v. Henderson*, 631 F.2d 1287 (6th Cir. 1980).

Accordingly, since Plaintiff had no liberty interest in his job assignment, the Due Process Clause was not implicated by Plaintiff's termination, with or without cause.

## V.     Fifth Amendment

Plaintiff asserts that Defendant violated his due process rights under the Fifth Amendment.  As previously discussed, the Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities.  The Fifth Amendment's Due Process Clause, in contrast, circumscribes only the actions of the federal government.  *Scott v. Clay Cty., Tennessee*, 205 F.3d 867, 873 n. 8 (6th Cir. 2000).  Therefore, because the named defendants are state actors, plaintiff's Fifth Amendment claims are without merit.

## VI.     Eighth Amendment

Plaintiff asserts that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Plaintiff's allegations fall far short of demonstrating an Eighth Amendment deprivation. Therefore, his Eighth Amendment claims are properly dismissed.

**VII.     Retaliation**

Plaintiff claims that Defendants retaliated against him for threatening to file a grievance on Defendant Kammers. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendant Harrison falsely asserted that Plaintiff had pleaded guilty to the misconduct ticket written by Defendant Kammers, and that he tricked Plaintiff into waiving his right to a hearing and an appeal. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely

alleges the ultimate fact of retaliation with regard to Defendant Harrison.  He has not presented any facts to support his conclusion that Defendant Harrison's conduct was motivated by a desire to retaliate against him because he threatened to file a grievance against Defendant Kammers.  Accordingly, his speculative allegation against Defendant Harrison fails to state a claim.

Plaintiff contends that Defendant Walczak refused to review the misconduct because Plaintiff had signed the section indicating that he was waiving his right to a hearing and an appeal.  However, as with Defendant Harrison, Plaintiff fails to present any facts showing that this conduct was motivated by a desire to retaliate against Plaintiff for engaging in protected conduct.  In fact, Plaintiff concedes that he did sign off on the misconduct because he was tricked by Defendant Harrison.  There is no indication that Defendant Walczak did not genuinely believe that Plaintiff had waived his right to a hearing.  Therefore, Plaintiff's retaliation claim against Defendant Walczak is properly dismissed.

Plaintiff claims that Defendant Smolinski retaliated against him by refusing to reclassify Plaintiff after he was on Double O status for thirty days because Plaintiff had filed a grievance against her on some unspecified earlier date.  Plaintiff does not allege any facts showing that Defendant Smolinski was aware of the grievance that had been filed against her, or that this unspecified grievance was a motivating factor in Defendant Smolinski's conduct.  Therefore, Plaintiff's retaliation claim against Defendant Smolinski is properly dismissed.

Finally, Plaintiff alleges that after he threatened to file a grievance on Defendant Kammers, Defendant Kammers stated: "You think you got away, but I'll teach you nigger!"  Defendant Kammers then wrote a misconduct on Plaintiff and falsified a poor work evaluation.  The Court concludes that Plaintiff's retaliation claim against Defendant Kammers states a claim under the First Amendment and may not be dismissed on initial review.

## VIII. Equal protection

Plaintiff claims that Defendants discriminated against him on the basis of his race. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff fails to allege any facts showing that Defendants Walczak and Smolinski purposefully discriminated against him on the basis of his race. Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose in their treatment of Plaintiff. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011). Therefore, Plaintiff's equal protection claims against Defendants Walczak and Smolinski are properly dismissed.

With regard to Defendant Kammers, Plaintiff alleges that he called Plaintiff "nigger" and stated that he was going to "teach" him. Defendant Kammers subsequently falsified a misconduct ticket on Plaintiff, which caused Plaintiff to lose his job. Plaintiff does not allege sufficient facts to support a claim that Defendant Kammers intentionally discriminated against him on the basis of his race by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). With respect to direct evidence, the Court notes that the mere fact that Defendant Kammers called Plaintiff a racial slur on a single occasion is insufficient to show purposeful discrimination. Isolated use of racially derogatory terms does not in and of itself constitute direct discrimination. *See LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 380 (6th Cir. 1993). That is particularly true here, where the principal factual allegations against Defendant Kammers, if true, point to a conclusion that Kammers was angry with Plaintiff for threatening to file a grievance on him, and that the subsequent ticket was motivated by a desire to retaliate against Plaintiff. Without more, Defendant Kammers' single use of a racial slur does not support a finding that he gave Plaintiff a ticket because of Plaintiff's race.

In addition, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), because he does not allege that Defendant Kammers failed to write a ticket on a white inmate who was similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458. To be a similarly-situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff claims that Defendant Kammers wrote tickets on other inmates on the same date, but he does not allege any specific facts about those inmates or their underlying conduct. Plaintiff therefore fails to state an equal protection claim against Defendant Kammers.

Finally, the Court notes that Plaintiff's allegation of discriminatory treatment by Defendant Harrison is conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination).

Here, Plaintiff's claim regarding disparate treatment is entirely conclusory. Plaintiff states that on the pertinent date, Defendant Harrison found all black prisoners guilty and all white prisoners not guilty. However, Plaintiff does not specify any facts to support a finding that the prisoners who received misconducts on that date were similarly situated in all relevant

15

respects. *Umani*, 432 F. App'x at 460. Plaintiff therefore fails to state an equal protection claim against Defendant Harrison.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants McCauley, Walczak, Harrison, and Smolinski will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against Defendant Kammers: Fourteenth Amendment Due Process and Equal Protection, Fifth Amendment, and Eighth Amendment claims. Plaintiff's retaliation claim against Defendants Kammers remains in the case.

An order consistent with this opinion will be entered.


Dated:  April 28, 2020                          /s/ Janet T. Neff
                                                Janet T. Neff
                                                United States District Judge